**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**NASIR JOHNSON** | Criminal No. 19-0787 (ES)<br><br>OPINION |

**MCNULTY, DISTRICT JUDGE**

Before the Court is defendant Nasir Johnson's motion (DE 21) for a reduction of sentence under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The Government opposes the motion. (DE 23).[1] This matter has been reassigned from Judge Salas to me for purposes of this motion. Having considered the parties' submissions, I decide this matter without oral argument. *See* Fed. R. Crim. P. 43(b)(4); *United States v. Styer,* 573 F.3d 151, 154 (3d Cir. 2009). For the following reasons, the motion is DENIED.

**I.      BACKGROUND[2]**

On October 30, 2019, Mr. Johnson pled guilty to knowingly possessing a firearm, in violation of 18 U.S.C. § 922(g)(1). (DE 14–16). On February 3, 2020,

---

[1] Pursuant to the District of New Jersey's Standing Order 2020-08, the Court informed the Office of the Federal Public Defender of the pending *pro se* motion. When the Office of the Federal Public Defendant declined representation of Mr. Johnson, the Court ordered the Government to respond to the motion. (DE 22).

[2] Citations to documents in the record will be abbreviated as follows:

  Mot. = Mr. Johnson's *pro se* letter motion, DE 21

  Opp. Br. = Government's brief in opposition to the motion, DE 23

  Sentencing Tr. = Transcript of Mr. Johnson's sentencing hearing

Mr. Johnson was sentenced by the Honorable Esther Salas to 79 months of imprisonment and three years of supervised release. (DE 19). Mr. Johnson is serving his sentence at FCI Berlin. (Opp. Br. at 1). His projected release date is April 22, 2026. (*Id.* at 11).

Mr. Johnson now moves this Court for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)[3] based on the COVID-19 pandemic. (*See generally* Mot.). The Government opposes the Motion.

## II.    LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). As relevant here, 18 U.S.C. § 3582(c)(1) provides as follows:

> (A) court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant such a reduction;

---

[3]    Mr. Johnson does not explicitly cite to the First Step Act in his motion, though he mentions the CARES Act and COVID-19. Seeing no other legal basis for the relief Mr. Johnson seeks, I construe his motion as one made pursuant to § 3582(c)(1)(A). *See also* Section III.E, *infra* (CARES Act application under 18 U.S.C. § 3624(c) is committed to discretion of BOP).

2

> [. . .]
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

See also *United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary and compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the section 3553(a) factors, to the extent applicable. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. SENTENCING COMM'N 2018).

## III. ANALYSIS

### A. Exhaustion

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet § 3582(c)(1)(A)'s exhaustion requirement, which requires either that 30 days have passed since the receipt of a compassionate release request by a warden, or that the defendant has exhausted all administrative remedies. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Government does not dispute that the exhaustion requirement is met here: Mr. Johnson submitted a request for compassionate release to the warden at FCI Berlin on or around October 22, 2020, and the request was denied on November 5, 2020. (Opp. Br. at 6 n.2; DE 23-1, Exhibit B). Thus,

3

more than 30 days have passed since the Warden received Mr. Johnson's request, and the Court may address the merits of the motion.

**B.     Extraordinary and Compelling Reasons for Reduction**

Congress directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard. *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). The Sentencing Commission issued a policy statement in which an application note lists three specific circumstances that qualify as extraordinary and compelling; generally speaking, the enumerated circumstances include: (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; or (iii) certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission included a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

Based on the subsequent passage of the First Step Act and the unique circumstances of the COVID-19 pandemic, I do not treat the examples in the policy statement as exclusive, and I consider all relevant circumstances.[4] As I have stated in prior opinions, in the current climate, "[t]he 'extraordinary and compelling reasons' inquiry logically has two components: (a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

Applying these standards here, Mr. Johnson has not met his burden of demonstrating that extraordinary and compelling circumstances exist to warrant a potential reduction in sentence. As for medical conditions, Mr. Johnson indicates that he suffers from certain mental health issues, and

---

4  I look to the Guidelines, application notes, and commentary for guidance. I will assume, however, that they do not limit what a court, within its discretion, may find "extraordinary and compelling." I therefore do not weigh in on the vexed question of the significance of the Sentencing Commission's failure, as of yet, to amend the Guidelines to conform to the First Step Act. (The Commission has a number of long-standing vacancies, and lacks a quorum. https://www.ussc.gov/about/who-we-are/organization.)

There appears to be a growing consensus that section 1B1.13 does not limit the court's discretion in considering compassionate release under the First Step Act. *See United States v. Brooker*, 976 F.3d 228 (2nd Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("When a defendant exercises his new right to move for compassionate release on his own behalf, in other words, § 1B1.13 does not apply."); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners.").

explains that the lockdowns and restrictions caused by COVID-19 are hazardous to his mental health. (Mot. at 1). However, Mr. Johnson's mental health issues are not the type of serious medical conditions that have served as a basis for finding extraordinary and compelling reasons for a potential sentence reduction.[5]

Courts around the country have referred to certain lists published by the Centers for Disease Control (CDC) as guideposts for evaluating the severity of medical conditions in the context of COVID-19 - based requests for compassionate release. *See e.g., United States v. Dent*, No. 18-20483, 2020 WL 4783921, at \*3 (E.D. Mich. Aug. 17, 2020) (relying on the CDC's classifications to conclude that defendant's cited medical condition was insufficient to meet the extraordinary and compelling standard); *United States v. Henries*, No. 00-0788, 2020 WL 4727090, at \*2 (D.N.J. Aug. 14, 2020) (same); *United States v. Henry*, No. 04-0004, 2020 WL 4748537, at \*5 (D. Md. Aug. 17, 2020) ("This Court's analysis of an individual's virus-related concerns is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19."). These lists identify groups of individuals who "*are* at increased risk of severe illness" from COVID-19 and other groups who "*might be* at an increased risk of increased illness from COVID-19.[6] I, too, use these lists as a

---

[5] The Government submitted Mr. Johnson's medical records (Exhibit A) to the Court *in camera* but did not file the same on the public docket. Because the privacy implications are obvious, I will order this exhibit to be filed under seal.

[6] *See People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. (last visited January 18, 2021).

6

guide, though they do not, standing alone, have the force of law.

Mr. Johnson's mental health issues are not present on either list; that is to say that per the CDC, Mr. Johnson's cited health issues do not certainly, or even maybe, put him at an increased risk of severe illness if he were to contract COVID-19. The lack of such an underlying medical condition counsels against granting Mr. Johnson's motion. *See e.g.*, *United States v. Adams*, No. 00-00697, 2020 WL 6063055, at *7 (D.N.J. Oct. 14, 2020) ("Defendant's COVID-19 argument is not availing because he has presented no evidence of an underlying medical condition, and a generalized concern about COVID-19 is insufficient to justify compassionate release.").

The current conditions at FCI Berlin only bolster this conclusion. The potential for widespread transmission of COVID-19 in the prison setting is readily apparent, given the nature of the environment and the impracticability of enforcing social distancing guidelines. However, the BOP has implemented safety procedures to reduce the risk of transmission.[7] These include limits on visitation, limited social distancing (facilities permitting), intake and quarantining procedures, testing, limits on movement of prisoners, screening of staff and visitors, and so on. (Opp. Br. at 8–10).

These efforts appear to be working at FCI Berlin. FCI Berlin is a medium security correctional institute with an adjacent minimum security satellite

---

[7] *See BOP Modified Operations*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (November 25, 2020 update) (last visited January 18, 2021).

7

camp. Collectively, the facilities house 621 inmates.[8] As of this writing, the BOP reports that, at FCI Berlin, there are currently zero positive-tested inmates and three positive-tested staff members, and that nine inmates and three staff members have recovered from the virus.[9] Thankfully, there have been no inmate or staff deaths at FCI Berlin attributed to the virus.[10]

Based on the foregoing data from FCI Berlin, and without a serious underlying medical condition, Mr. Johnson's motion is largely based on generalities about infection rates in prison facilities and the possibility that COVID-19 may spread to a particular prison. But these reasons alone "cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *See Raia*, 954 F.3d at 597. Therefore, Mr. Johnson has not set forth the requisite extraordinary and compelling reasons to justify a sentence reduction and his motion must be denied for this reason alone. *See United*

---

[8] *See FCI Berlin*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/ber/ (last visited January 18, 2021).

[9] *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/. (last visited January 18, 2021).

[10] Mr. Johnson notes that he contracted COVID-19 in July while housed in Essex County Jail and that he stayed on bed rest suffering from unbearable pain. (Mot. at 1). The Government seems to dispute the truth of this assertion. (Opp. Br. at 3). Arguably, if true, this fact would actually weigh against granting Mr. Johnson's motion; although the likelihood and possibility of reinfection is not thoroughly understood, the CDC reports that "cases of reinfection with COVID-19 have been reported but remain rare." *Reinfection with COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html. (last updated October 27, 2020) (last visited January 18, 2021). At most, this factor is neutral because Mr. Johnson does not cite to any underlying medical issues that would place him at a severe risk of illness if he were to become reinfected with the virus and because he is now housed at a new facility which seems to be effectively curtailing the virus.

*States v. Munoz*, No. 15-00324, 2020 WL 7074351, at *3 (D.N.J. Dec. 3, 2020) (denying motion for compassionate release based on the defendant's failure to demonstrate an extraordinary and compelling reason for a sentence reduction). However, even if Mr. Johnson could demonstrate the requisite extraordinary and compelling circumstances, I would deny the motion based on the section 3553(a) factors and dangerousness.

### C. Section 3553(a) Factors

In addition to any finding of extraordinary and compelling circumstances, I must consider the foregoing in the context of the familiar sentencing factors of 18 U.S.C. § 3553(a), "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).[11] *United States v. Brown*, Nos. 07-0890, 07-0019, 2020 WL 2466081, at *4 (D.N.J. May 13, 2020).

---

[11] **(a) Factors to be Considered in Imposing a Sentence. —** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

On February 3, 2020, the Honorable Esther Salas sentenced Mr. Johnson to 79 months' imprisonment and three years of supervised release. (DE 19). Mr. Johnson's guidelines sentencing range was 70 to 87 months. (Sentencing Tr. at 7:10–17). In fashioning Mr. Johnson's sentence, the Court considered, *inter alia*, the seriousness of the offense, the need to promote respect for the law, the need for specific and general deterrence, the need to protect the public, and the history and characteristics of the defendant. Based

---

    **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

  **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement—

  **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

  **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

on those considerations, Judge Salas sentenced Mr. Johnson in the middle of the guidelines range.

In considering Mr. Johnson's motion, I am guided by the findings made by Judge Salas at sentencing, which still hold true today. As Judge Salas found, the offense here was a serious one and involved certain "aggravating circumstances." The firearm that Mr. Johnson illegally possessed was loaded; when he possessed it, he was intoxicated and operating a motor vehicle while on Facetime. (*Id.* at 32:14–21). And he did so while on supervised release. (*Id.* at 44:5–7). Moreover, Judge Salas spoke at length about Mr. Johnson's criminal history in connection with specific deterrence, the need to promote respect for the law and to protect the public. As Judge Salas explained, Mr. Johnson has a "significant criminal history," and his guidelines range was based on a criminal history category of V. (*Id.* at 33:18–21). He committed his first crime as a juvenile and from then on "it was one after another," with a "steady increase in terms of the types of offenses [and] the severity of those offenses." (*Id.* at 32:22–33:5). Mr. Johnson has been in and out of jail, has been the subject of certain rehabilitation efforts, and "none of that seems to have worked or clicked in any way." (*Id.* at 34:20–25). These facts, Judge Salas found, suggest that specific deterrence is necessary and that there is a need to protect the public from the defendant's repeated criminal activity. I agree, and I weigh heavily the factor of defendant's recidivism. *See Moore*, 2020 WL 4282747, at *7 (denying motion for compassionate release, notwithstanding the fact that defendant's projected release date was less than four months away,

11

because of defendant's recidivism); *United States v. DeSciscio*, No. 88-0239, 2020 WL 3893711, at *7 (D.N.J. July 10, 2020) (emphasizing the need to protect the public "from even a possibility of recidivism" in denying a motion for compassionate release).

Considering all of the foregoing, releasing this defendant over five years early on a 6½ year sentence would fail to reflect the balance of the § 3553(a) factors—namely, the seriousness of the offense, the need to promote respect for the law, general and specific deterrence, and the need to protect the public from future crimes of the defendant. *See Brown*, 2020 WL 2466081, at *4 (concluding that the § 3553(a) factors weighed against granting defendant's motion for a reduced sentence); *DeSciscio*, 2020 WL 3893711, at *7.

Accordingly, an analysis of the § 3553(a) factors, too, warrants denial of the motion.

### D. Dangerousness

For overlapping reasons, the requisite dangerousness considerations also warrant denying the motion. In connection with pretrial detention, 18 U.S.C. § 3142(g) requires that courts consider (i) the nature and circumstances of the offense; (ii) the weight of the evidence against the person; (iii) the history and characteristics of the person; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Factor (ii) is mooted by the defendant's conviction; factors (i) and (iii) largely duplicate the § 3553(a) considerations discussed above. Factor (iv), the nature of the danger, is not favorable to the defendant. Being a felon in

possession of a firearm is a serious offense, and considering the "aggravating circumstances" here and given the defendant's criminal record, the danger to the community is apparent. *See United States v. Pass*, No. 10-0739, 2020 WL 2332001, at *3 (E.D. Pa. May 11, 2020).

Having weighed all of the relevant factors, I will deny the defendant's motion for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).

### E. Home Confinement

Finally, the Government interprets Mr. Johnson's motion to include an alternative request for the Court to allow him to serve the remainder of his sentence under home confinement. (Opp. Br. at 13). However, the Court has no authority to grant such relief. "[O]nly the Bureau of Prisons has the actual authority to designate the place of incarceration." *United States v. Voda*, 994 F.2d 149, 151–52 (5th Cir. 1993); *see also Aigebkaen v. Warden*, No. 20-5732, 2020 WL 6883438, at *4 (D.N.J. Nov. 24, 2020) ("Pre-release placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion."). Accordingly, to the extent Mr. Johnson may be requesting this alternative relief, this request is also denied.

### IV. CONCLUSION

For the foregoing reasons, the defendant's motion is DENIED. An appropriate Order accompanies this Opinion.

Dated: January 19, 2021

/s/ Kevin McNulty
_____
Kevin McNulty, U.S.D.J.